1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   DAMIEN LEE DAVIS,                      No. 1:15-cv-01869-LJO-SKO HC

12                    Petitioner,

13        v.                               **FINDINGS AND RECOMMENDATION**
                                           **THAT THE COURT DENY PETITION**
14   MARION SPEARMAN, Warden, High         **FOR WRIT OF HABEAS CORPUS**
     Desert State Prison
15                                          **(Doc. 1)**
                     Respondent.
16

17

18

19        Petitioner, Damien Lee Davis, is a state prisoner proceeding *pro se* with a petition for

20   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his petition, Petitioner presents three

21   grounds for habeas relief: (1) judicial bias; (2) prosecutorial misconduct; and (3) ineffective

22   assistance of counsel.  The Court referred the matter to the Magistrate Judge pursuant to 28

23   U.S.C. § 636(b)(1) and Local Rules 302 and 304.  Having reviewed the record and applicable

24   law, the undersigned recommends that the Court deny habeas relief and decline to hold an

25   evidentiary hearing on Petitioner's claims.

26

27

28
                                            1

# I.     __Procedural and Factual Background__[1]

On the afternoon of April 20, 2010, Jose Christopher Lopez ("Lopez") arrived at an apartment complex to pick up his girlfriend, Michelle Avery ("Avery"), and their two children. Avery's mother lived at the apartment complex and Avery and the children moved in with her in April, after Avery and Lopez had an argument.

Petitioner was dating Avery's sister, Carmen Nicole Swayne ("Swayne"). Petitioner and Swayne lived in the same complex as Avery's mother, but in a different apartment. Petitioner and Lopez were casual acquaintances, and were dating the sisters, Avery and Swayne. Lopez knew that Petitioner wanted to beat him up because of an argument between Lopez and Avery that led to Avery moving in with her mother. Avery heard Petitioner state that he did not like Lopez and planned to "fight him."

After arriving at the apartment complex on April 20, 2010, Lopez encountered Petitioner. The two walked up to each other, Lopez stated, "Let's get it over with then," and the two began to fight. Petitioner stabbed Lopez twice in the upper torso with a folding knife that was three inches long and one inch wide. Lopez's girlfriend, Avery, intervened in the fight and pushed Petitioner away from Lopez. As he was pushed away, Petitioner commented, "I bet you won't hit her [Avery] again." The fight only lasted two or three seconds. Lopez was then taken by ambulance to a hospital in Visalia. He was admitted for two days, and his wounds were drained and stitched up.

At the hospital, Lopez identified Petitioner as the individual who had assaulted him. However, Petitioner told police that although he was involved in a physical confrontation with Lopez, Petitioner did not use a weapon to cut him. Instead, Petitioner claimed Lopez hit Swayne, Petitioner's girlfriend, and Swayne stabbed Lopez.

---

[1] The factual and procedural background is taken from the opinion of the California Court of Appeal, Fifth Appellate District, *People v. Davis*, (No. F068282) (Cal. Ct. App. Jan. 5, 2016), and review of the record.

Petitioner was charged with one count of assault with a deadly weapon, a box cutter, in violation of California Penal Code § 245(a)(1). It was further alleged that Petitioner inflicted great bodily injury (Cal. Penal Code § 12022.7(a)), and personally used a deadly and dangerous weapon (Cal. Penal Code § 12022(b)(1)). Petitioner had six prior convictions that qualified as strikes (Cal. Penal Code §§ 667(b)-(i); 1170.12).

A jury found Petitioner guilty of assault with a deadly weapon and found true the allegations that Petitioner personally used a deadly weapon and personally inflicted great bodily injury in committing the offense. In a bifurcated proceeding on Petitioner's prior convictions, the court found true the allegation that Petitioner had suffered six prior felony convictions for assault with a firearm, each of which qualified as a strike. The court sentenced Petitioner to 47 years to life in prison.

On September 14, 2012, Petitioner appealed his conviction to the California Court of Appeal, Fifth Appellate District. On appeal, Petitioner argued (1) there was insufficient evidence to support the finding that he had six strikes; and (2) the sentence imposed by the trial court was improperly calculated. On June 4, 2013, a panel of the Court of Appeal reversed the findings on two of the six strike allegations, because the parties agreed that two of the purported strikes were actually convictions for non-strike offenses. The Court of Appeal vacated Petitioner's sentence and remanded the matter for resentencing. The trial court resentenced Petitioner to a total term of 33 years to life in prison.

Petitioner filed a petition for writ of habeas corpus with the Tulare County Superior Court on June 2, 2014. Petitioner raised five claims before the Superior Court: (1) prosecutorial misconduct; (2) judicial bias; (3) insufficiency of evidence; (4) violation of his Due Process Rights as to the designation of the investigating officer and discovery issues; and (5) ineffective assistance of counsel. The Superior Court denied his petition for writ of habeas corpus on June

17, 2014, because Petitioner did not assert his claims on direct appeal. On July 14, 2014, Petitioner filed his petition for writ of habeas corpus with the Court of Appeal.

While his petition for habeas review was pending with the Court of Appeal, Petitioner filed his second direct appeal with the Court of Appeal on July 30, 2014. On his second direct appeal, Petitioner alleged (1) ineffective assistance of counsel; and (2) Petitioner's prior convictions were improperly counted to calculate his strikes.

The Court of Appeal summarily denied the petition for writ of habeas corpus on September 18, 2014.

Petitioner filed his petition for writ of habeas corpus with the California Supreme Court on November 12, 2014. The Supreme Court summarily denied the petition for writ of habeas corpus on January 21, 2015.

On November 30, 2015, Petitioner filed his petition for writ of habeas corpus before this Court. Respondent filed a response on March 21, 2016, and Petitioner filed a Reply on June 20, 2016.

On January 5, 2016, the Court of Appeal affirmed Petitioner's conviction. On February 17, 2016, Petitioner filed a Petition for Review with the California Supreme Court, which was summarily denied on March 23, 2016.

## II.    **Standard of Review**

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000). On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997). Under the statutory terms, the petition in this case is governed by

4

AEDPA's provisions because it was filed after April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring). Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings. *Id.* Under AEDPA, a petitioner can obtain habeas corpus relief only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71. In doing so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision. *Id.* The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72. The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Petitioner has the burden of establishing that the decision of the state

court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.

### III. Procedural Default

Petitioner's first two grounds for habeas relief are: (1) judicial bias; and (2) prosecutorial misconduct. The Superior Court determined these claims were procedurally defaulted, because Petitioner first raised these claims in his petition for writ of habeas corpus, instead of on direct review.

#### A. Standard of Review for Procedural Default

A federal court cannot review claims in a petition for writ of habeas corpus if a state court denied relief on the claims based on state law procedural grounds that are independent of federal law and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "A district court properly refuses to reach the merits of a habeas petition if the petitioner has defaulted on the particular state's procedural requirements." *Park v. California*, 202 F.3d 1146, 1150 (2000).

A petitioner procedurally defaults his claim if he fails to comply with a state procedural rule or fails to raise his claim at the state level. *Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th

Cir. 2003) (citing *O'Sullivan v. Boerckel*, 562 U.S. 838, 844-45 (1999)). The procedural default doctrine applies when a state court determination of default is based in state law that is both adequate to support he judgment and independent of federal law. *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991). An adequate rule is one that is "firmly established and regularly followed." *Id.* (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)); *Bennett v. Mueller*, 322 F.3d 573, 583 (9th Cir. 2003). An independent rule is one that is not "interwoven with federal law." *Park*, 202 F.3d 1146 at 1152 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)).

When a state prisoner has defaulted on his federal claim in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred, unless the prisoner can demonstrate "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

## B. Superior Court Opinion

In his habeas petition before the Superior Court, Petitioner raised five claims: (1) prosecutorial misconduct; (2) judicial bias; (3) insufficiency of evidence; (4) violation of his Due Process Rights as to the designation of the investigating officer and discovery issues; and (5) ineffective assistance of counsel. (Lodged Doc. 31).

The Superior Court denied the first four claims, finding that Petitioner

> [f]ailed to assert [the] claims on direct appeal and has not demonstrated an exception to the general rule that a court will dismiss a habeas petition if it alleges an issue that could have been, but was not raised on direct appeal. (In re Harris (1993) 5 Cal. 4th 813, 829).[2]

---

[2] In *Harris*, the California Supreme Court decided

> [p]roper appellate procedure [ ] demands that, absent strong justification, issues that could be raised on appeal must initially be so presented, and not on habeas corpus in the first instance. Accordingly, an unjustified failure to present an issue on appeal will generally preclude its consideration in a postconviction petition for writ of habeas corpus.

*In re Harris*, 5 Cal. 4th 813, 829 (1993) (*citing Ex parte Dixon*, 41 Cal. 2d 756 (1953)).

(Lodged Doc. 32 at 2). In other words, Petitioner failed to exhaust his claims on direct appeal and

therefore could not raise them in a petition for writ of habeas corpus.

Here, the Superior Court's decision is the one reasoned state court decision that addresses

Petitioner's habeas claims; therefore the court will "look[ ] through" the summary denial by the

California Supreme Court to the Superior Court decision and presume the Supreme Court's

decision "rest[s] upon the same ground." *Ylst*, 501 U.S. at 803. Additionally, as here, where "the

last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a

later decision rejecting the claim did not silently disregard that bar." *Id*.

## C. State Court's Finding of Procedural Default Was Independent of Federal Law.

The Court must first determine whether the state court's finding of procedural default is

independent of federal law and adequate. *Id*. "For a state procedural rule to be 'independent,' the

state law basis for the decision must not be interwoven with the federal law." *Park*, 202 F.3d at

1152 (citing *Long*, 463 U.S. at 1040-41). State law grounds are "so interwoven if 'the state has

made application of the procedural bar depend on an antecedent ruling on federal law [such as]

the determination of whether federal constitutional error has been committed.'" *Id*. (quoting *Ake

v. Oklahoma*, 470 U.S. 68, 75 (1985)).

In California, courts may not consider claims on habeas review that should have first been

raised on direct appeal. *Ex parte Dixon*, 41 Cal. 2d 756, 760 (1953) ("It is, of course, an

established rule that habeas corpus may not be used instead of an appeal to review determinations

of fact made upon conflicting evidence after a fair trial."). California's procedural default rule is

independent of federal law. *See Tran v. Sherman*, No. 1:15-cv-00716-LJO, 2015 WL 510879 at

*1 (E.D. Cal. Aug. 31, 2015); *Sanchez v. Ryan*, 392 F. Supp. 2d 1136, 1138-39 (C.D. Cal. 2005);

*Protsman v. Pliler*, 318 F. Supp. 2d 1004, 1007-08 (S.D. Ca. 2004). Consequently, because the

Superior Court's denial was based on an independent state procedural rule, denial of the petition was based on independent state law grounds.

### D. State Court's Procedural Ground Was Adequate

A state law ground is "adequate" if it is "'firmly established and regularly followed' at the time it was applied by the state court." *Poland v. Stewart*, 169 F.3d 573, 577 (9th Cir. 1999) (quoting *Ford v. Georgia*, 498 U.S. 411, 424 (1991)). California's procedural default rule is established and followed in California state courts; therefore the procedural ground was adequately applied and bars federal review by this Court. *See Sanchez*, 392 F. Supp. 2d at 1138-39; *Protsman*, 318 F. Supp. 2d at 1008. Based on the foregoing, California's procedural default rule is adequate and independent; therefore, the Court will not review Petitioner's claim unless he can demonstrate "cause and prejudice" or a fundamental miscarriage of justice.

### E. Petitioner Cannot Overcome His Procedural Default

As the Court has determined that an independent and adequate state procedural ground exists, "federal habeas review is barred unless the prisoner can demonstrate "cause" for the procedural default and "actual prejudice," or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

"Cause under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Id*. at 753 (internal quotation marks omitted) (emphasis in original). Examples include, "a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that some interference by officials . . . made compliance impracticable, would constitute cause under this standard." *Id*. (internal citation and quotation marks omitted). To show "prejudice," a petitioner "must show 'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"

*Murray v. Carrier*, 477 U.S. 478, 494 (1986) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis in original).

A fundamental miscarriage of justice occurs, in the context of habeas corpus cases, in a "narrow class of cases" involving "extraordinary instances when a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).

Because Petitioner's claims are procedurally defaulted, the Court will only address the claims for which Petitioner can demonstrate "cause and actual prejudice" or where a failure to consider his claims will result in a fundamental miscarriage of justice. Petitioner has combined the claims he had alleged in his Superior Court petition[3] in his petition before this Court and now alleges: (1) judicial bias; and (2) prosecutorial misconduct.

### 1. **Judicial Bias**

Petitioner argues that the trial court was biased against him during trial, because the court: (1) allowed the prosecution to change the number of strikes in the information from 2 to 3; (2) allowed the prosecution to turn over evidence of phone calls 3 days before trial; (3) allowed hearsay evidence in at trial; (4) intervened during the questioning of Lopez on his prior convictions; and (5) warned Swayne regarding the amount of time she could face if charged with assault with a deadly weapon. (Doc. 27 at 2.) Petitioner makes three arguments as to why the Court should address his judicial bias claims despite the procedural default. First, Petitioner contends the state court never ruled on this issue. *Id.* Second, he argues that the Court should consider his claims because he is actually innocent and "procedural default cannot be used to deny him the right to have his habeas claim heard on the merits." (Doc. 1 at 7) (citing *Schlup v.*

---

[3] In his petition for habeas corpus filed on June 2, 2014 with the Superior Court, Petitioner alleged (1) prosecutorial misconduct; (2) judicial bias; (3) insufficiency of evidence; (4) violation of his Due Process Rights as to the designation of the investigating officer and discovery issues; and (5) ineffective assistance of counsel.

*Delo*, 513 U.S. 298 (1995)). Third, Petitioner states that "to show a pattern of bias relies on evidence outside the record for direct appeal." *Id.*

Addressing the first issue, Petitioner is incorrect that the state court never ruled on his claims. Petitioner first filed these claims in a habeas corpus petition with the Superior Court. The Superior Court explicitly found that these claims were procedurally defaulted because Petitioner did not raise them in his direct appeal. (*See* Doc. 32.) Although both the Court of Appeal and Supreme Court summarily denied Petitioner's habeas petition, where "the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar." *Ylst*, 501 U.S. at 803. Therefore, the Superior Court's finding of procedural default addressed Petitioner's claim, and the summary denials by the Court of Appeal and Supreme Court ruled on Petitioner's Claims.

### a. Petition Cannot Prove He Was Actually Innocent of the Crime or That There Was a Fundamental Miscarriage of Justice.

Petitioner cites to *Schlup* for the proposition that his procedural default does not bar this Court from considering his claims because he is actually innocent. In *Schlup*, the Supreme Court determined the standard governing "the miscarriage of justice inquiry when a petitioner who has been sentenced to death raises a claim of actual innocence to avoid a procedural bar to the consideration of the merits of his constitutional claims." *Schlup*, 513 U.S. at 327. Based on this actual innocence exception to the procedural default bar, the Court may excuse Petitioner's procedural default if he can make the requisite showing that he is actually innocent of assault with a deadly weapon. *Id.* at 315-16. Petitioner must show that, "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup*, 513 U.S. at 327).

California Penal Code § 245(a)(1) states "[a]ny person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm shall be punished by

11

imprisonment . . . ." The California Criminal Jury Instructions set forth the elements of the offense of assault with a deadly weapon, as follows:

> (1) The defendant did an act with [a deadly weapon] that by its nature would directly and probably result in the application of force to a person;
>
> (2) The defendant did that act willfully;
>
> (3) When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; and
>
> (4) When the defendant acted, he had the present ability to apply force [with a deadly weapon other than a firearm].
>
> Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm.
>
> A deadly weapon other than a firearm is any object, instrument, or weapon that is inherently deadly or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury.

CALCRIM 875.

Here, the victim of the assault, Lopez, testified at trial that he saw Petitioner when he arrived at the apartment complex. (Lodged Doc. 7 at 42.) The two "exchanged words," and Petitioner asked Lopez "Is there a problem?" *Id*. at 43. Lopez testified that he and Petitioner swung at each other with their fists and Petitioner stabbed him twice during the altercation. *Id*. at 47-48. After being stabbed, Lopez backed away from Petitioner and saw Petitioner holding a knife in his right hand. *Id*. at 49. At the hospital, Lopez identified Petitioner as the person who had stabbed him. (Lodged Doc. 8 at 202.)

Lopez's girlfriend, Avery, also testified at trial. Avery testified that Petitioner told her that he did not like Lopez and was going to fight him. Avery witnessed the fight between Petitioner and Lopez and saw Petitioner with a knife in his hand. *Id*. at 119, 121. After Avery stepped in between Petitioner and Lopez to separate them, she saw her sister, Swayne, walk up to Lopez and swing at him with her fist. *Id*. at 121-23. After the fight, Avery heard Swayne screaming "I did

12

it. I'm the one that did it" as Swayne walked back into her apartment. *Id*. at 127-28. A neighbor from the apartment building also testified that he heard Swayne state, "Tell them – the – the police I stabbed him [Lopez]." (Lodged Doc. 7 at 81.)

At trial, Swayne testified that Lopez approached Petitioner and her in an aggressive manner at the apartment complex. (Lodged Doc. 8 at 267.) Lopez threw the first punch and hit Swayne. *Id*. at 270-71. Swayne testified that she hit Lopez and then pulled out her knife and stabbed him. *Id*. at 271. Petitioner was standing with Swayne and Lopez at the time of the fight, but Swayne was unsure if Petitioner hit Lopez. *Id*. Swayne usually carried a knife for protection. *Id*. at 273-74. The day after the stabbing, Swayne told police that she was the one who stabbed Lopez. *Id*. at 277.

Two detectives testified that Swayne told them that Lopez hit her and she swung back with her fist; however, Swayne never told the detectives that she stabbed Lopez. (Lodged Doc. 9 at 357-59, 370-75.)

At trial, the prosecution played several phone calls between Petitioner and Swayne, which were recorded while Petitioner was in jail. *Id*. at 391-95. During one of the calls, Swayne stated, "I'm going to get you out. One way or another." (Lodged Doc. 2 at 339). Swayne stated, "You know what I'm talking about, right." *Id*. Petitioner responded, "Yeah, but don't do it." *Id*. After the phone calls were played for the jury, Swayne retook the stand and testified that she meant she was going to tell police the truth that she stabbed Lopez because Petitioner "didn't want [her] to." (Lodged Doc. 9 at 416, 420.)

Petitioner does not argue that an assault was not committed, but instead argues that Swayne was guilty of the assault. Petitioner points to Swayne's testimony that she confessed to the stabbing to prove that he is actually innocent of the crime. However, the jury heard Swayne's testimony as well as the testimony of Lopez and Avery—who testified that Petitioner, not

Swayne, stabbed Lopez. A neighbor also corroborated Avery's testimony that Swayne was yelling that everyone should tell the police that she stabbed Lopez. Two detectives also testified that Swayne did not admit to stabbing Lopez after the crime. Based on this evidence, the Court cannot say that it "is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House*, 547 U.S. at 537 (quoting *Schlup*, 513 U.S. at 327) (internal quotation marks omitted). Petitioner has not demonstrated that the Court's failure to examine his claims despite the procedural default would result in a fundamental miscarriage of justice.

**b.  Petitioner Cannot Satisfy the "Cause and Prejudice Test."**

Petitioner claims the trial court displayed judicial bias against him throughout the trial. (Doc. 1 at 20-22.) Petitioner contends the court (1) allowed the prosecution to change the number of strikes in the information from 2 to 3; (2) allowed the prosecution to turn over evidence of phone calls 3 days before trial; (3) allowed hearsay evidence in at trial; (4) intervened during the questioning of Lopez on his prior convictions; and (5) warned Swayne about the amount of time she could face if charged with assault with a deadly weapon. Petitioner alleges that he could not present these claims on direct appeal because the claims rely on "evidence outside the record for direct appeal." (Doc. 27 at 2.)

As noted above, Petitioner must prove that there was "cause and actual prejudice" for the Court to analyze his claim despite the procedural default bar. The "existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (quoting *Carrier*, 477 U.S. at 488) (internal quotation marks omitted). Although Petitioner states that evidence of judicial bias was not available to him on direct review, he does not demonstrate "that some objective factor external to [himself] impeded

[his] efforts to comply with the State's procedural rule." *Id*. Indeed, Petitioner does not cite to any new evidence in his claim for judicial bias. Therefore, Petitioner cannot satisfy the "cause" prong of the "cause and prejudice" test and the Court will recommend against reviewing this claim.

## 2. Prosecutorial Misconduct

In his habeas corpus petition before the Superior Court, Petitioner alleged: (1) prosecutorial misconduct; (2) insufficient evidence; and (3) violation of his due process rights as to the designation of the investigating officer and discovery issues. (Lodged Doc. 32.) In his petition, Petitioner combined these claims under the broad claim of prosecutorial misconduct. (Doc. 1 at 33-52.) Within this broader claim of prosecutorial misconduct, Petitioner alleges several specific instances of prosecutorial misconduct: (1) Petitioner was denied his Sixth and Fourteenth Amendment Due Process Rights by the prosecution's "designated investigative officer Detective Jeff Detwiler (Pi[t]chess Motion)"[4]; (2) Petitioner was denied his right to the disclosure of "collected and accumulated evidence" in violation of his Due Process Rights; (3) prosecutorial misconduct prevented Petitioner from the proper presentation of factual information; and (4) there was insufficient evidence to support his conviction. *Id*. at 18-19.

### a. Detective Detwiler

Petitioner alleges that Detective Detwiler did not turn over all of the evidence he uncovered during his investigation to the prosecutor before trial. (Doc. 1 at 38.) Petitioner specifically asserts that Detective Detwiler destroyed evidence of jail phone calls between Petitioner and Swayne, in which Swayne confesses to the crime. *Id*. at 35. Additionally, Petitioner claims that Detective Detwiler destroyed reports that documented Swayne's

---

[4] In *Pitchess v. Superior Court*, the California Supreme Court held that a criminal defendant has a limited right to discovery of a police officer's personnel records in order to ensure "a fair trial and an intelligent defense in light of all relevant and reasonably accessible information." 11 Cal. 3d 531, 535 (1974), *superseded by statute, as recognized in Long Beach Police Officers Ass'n v. City of Long Beach*, 51 Cal 4th 59 (2014).

confessions and coerced Swayne into not confessing to the stabbing. *Id*. at 38. Petitioner does not present any of the evidence he alleges was not given to the prosecutor, or explain why he could not have presented these claims to the Court of Appeal. Therefore, Petitioner cannot show "cause."

Even assuming that Detective Detwiler interfered with the trial by suppressing evidence of Swayne's confessions, Petitioner cannot prove the "prejudice" prong of the "cause and prejudice" test. Specifically, Petitioner cannot show that Detective Detwiler's actions "worked to [Petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension," because Swayne testified at trial that she was the one who stabbed Lopez. *Murray*, 477 at 494 (quoting *Frady*, 456 U.S. at 170) (citations and emphasis omitted). The jury heard Swayne's confession, but chose instead to believe Lopez's and Avery's version of events—that Petitioner stabbed Lopez. Because the jury heard the evidence Detective Detwiler had allegedly suppressed, Petitioner cannot show "actual prejudice." Therefore, the Court recommends against reviewing Petitioner's claims.

Finally, Detective Detwiler was arrested in 2013, which Petitioner alleges shows his "compromised moral t[u]rpitude and a pattern of 'dissuading witnesses.'" Petitioner does not state why he was unable to include this information in his direct appeal, given that the direct appeal was not filed until 2014. Because Petitioner cannot satisfy the "cause" prong of the "cause and prejudice" test, the Court recommends against reviewing Petitioner's claims.

### b. Failure to Disclose Evidence

Petitioner contends that the prosecution committed prosecutorial misconduct by failing to turn over all of the evidence to him during the trial. (Doc. 27 at 17.) Petitioner asks the Court to overlook the procedural bar against this claim because the evidence of the prosecutor's misconduct was not available at the time of his direct appeal. *Id*. Although Petitioner states he

could not present this evidence on direct appeal, he does not describe *why* he did not have the evidence at the time of the appeal. He has not shown "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (quoting *Carrier*, 477 U.S. at 488) (internal quotation marks omitted). Consequently, Petitioner cannot satisfy the "cause" prong of the "cause and prejudice" test.

### c. **Insufficient Evidence**

Finally, Petitioner maintains that there was insufficient evidence to support his conviction for assault with a deadly weapon. (Doc. 27 at 27.) Petitioner again alleges he was unable to raise this claim on direct appeal because the facts were not in the record. *Id*. at 28. However, Petitioner does not identify *what* facts were not in the record or *why* they were not in the record. Additionally, as discussed, *supra*, there was sufficient evidence to convict Petitioner of the crime of assault. Petitioner cannot therefore meet the "cause" prong of the "cause and prejudice" test.

## IV. **The State Court Did Not Err in Rejecting Petitioner's Ineffective Assistance of Counsel Claim.**

Petitioner asserts that both his trial and appellate counsel were ineffective. (Doc. 1 at 22-33.) Petitioner contends that trial counsel did not investigate police reports, hospital reports, or phone calls. *Id*. at 23. Had trial counsel completed an investigation, Petitioner states trial counsel would have been able to prove Petitioner's actual innocence. *Id*. Petitioner also contends that trial counsel was ineffective for not filing *in limine* motions or requesting a bifurcated trial.[5] *Id*. at 26. As to appellate counsel, Petitioner argues that appellate counsel's failure to file a motion for a new trial amounted to ineffective assistance of counsel. *Id*.

Respondent counters that trial counsel could not have been ineffective given the fact that post-trial counsel decided not to file a motion for a new trial. (Doc. 15 at 18.) Respondent also

---

[5] Petitioner further alleges that counsel was on medication that affected his abilities at trial. (Doc. 1 at 26.) Petitioner provides no proof of this allegation; therefore, the Court will not address it.

notes that appellate counsel's decision not to file a motion for a new trial or pursue an ineffective assistance claim on appeal was tactical, and cannot form the basis of an ineffective assistance of counsel claim. *Id*. at 19.

### A. <u>Standard of Review for Ineffective Assistance of Counsel Claims</u>

The purpose of the Sixth Amendment right to counsel is to ensure that the defendant receives a fair trial. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "[T]he right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his trial counsel's performance "fell below an objective standard of reasonableness" at the time of trial and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. The *Strickland* test requires Petitioner to establish two elements: (1) his attorney's representation was deficient and (2) he suffered prejudice as a result of the deficient representation. Both elements are mixed questions of law and fact. *Id.* at 698.

These elements need not be considered in order. *Id.* at 697. "The object of an ineffectiveness claim is not to grade counsel's performance." *Id.* If a court can resolve an ineffectiveness claim by finding a lack of prejudice, it need not consider whether counsel's performance was deficient. *Id.*

### B. <u>Superior Court Opinion</u>

In examining Petitioner's claim, the Superior Court determined

[P]etitioner has failed to establish the basic requirements for success on [the] claim.

A defendant claiming ineffective assistance of counsel must satisfy Strickland's two-part test requiring a showing of counsel's deficient performance and prejudice. (*Strickland*, *supra*, 466 U.S. at p. 687)[.]  As to deficient performance, a defendant "must show that counsel's representation fell below an objective standard of reasonableness" measured against "prevailing professional norms." (*Id*. [a]t p. 688)[.]  "Judicial scrutiny of counsel's performance must be highly deferential."  A court must evaluate counsel's performance "from counsel's perspective at the time" without "the distorting effects of hindsight," and "a professional assistance. . ."  (*Id*. at p. 689)[.]  The prejudice prong requires a defendant to establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland*, *supra*, 466 U.S. at p. 694)[.]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v. Jacobs*, 220 Cal. App. 4th 67, 75-76 (Cal. App. 6th Dist. 2013)[.]

Petitioner has failed to state a basis for relief.

(Lodged Doc. 32, at 2).

## C. <u>Denial of Petitioner's Ineffective Assistance of Counsel Claim Was Not Objectively Unreasonable.</u>

Petitioner maintains that trial counsel was ineffective for failing to investigate, file motions, and call certain witnesses.   Under *Strickland*, the Court must determine whether counsel's performance fell below "an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.  Counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Id*. at 691.  The Ninth Circuit has held that "a lawyer who fails adequately to investigate, and to introduce into evidence, evidence that demonstrates his client's factual innocence, or that raises sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance."  *Avila v. Galaza*, 297 F.3d 911, 919 (9th Cir. 2002) (quoting *Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999) (holding that counsel's failure to review key documents corroborating defense witness's testimony constituted deficient performance) (internal quotation marks omitted)).

Here, Petitioner's counsel introduced evidence that supported Petitioner's version of the stabbing. *Lord v. Wood*, 184 F.3d 1083, 1095-96 (9th Cir. 1999) (holding that counsel's failure

19

to call key witnesses whose testimony undermined the prosecutor's case constituted deficient performance."). Trial counsel presented Swayne's testimony in support of Petitioner's innocence or to at least raise reasonable doubt about his guilt. Once counsel, as here, has "'gathered sufficient evidence upon which to base their tactical choice,'" the court will give the attorney "considerable discretion to make strategic decisions about what to investigate." *Duncan v. Ornoski*, 528 F.3d 1222, 1234 (9th Cir. 2008) (quoting *Jennings v. Woodford*, 290 F.3d 1006, 1014 (9th Cir. 2002)). As Petitioner has not presented any evidence to show that counsel failed to investigate his claims or present Petitioner's preferred defense, the Court recommends denying Petitioner's claim for ineffective assistance of counsel for failure to investigate.

Petitioner argues that counsel failed to file *motions in limine* prior to trial, but does not specify what *motions in limine* he believes counsel should have filed, or what evidence should have been excluded, pursuant to *motion in limine*, at trial. Because Petitioner cannot identify what actions trial counsel failed to take, the Court recommends denying this claim.

Petitioner claims that counsel should have called two witnesses to show that Lopez provoked Swayne to defend herself. The proper inquiry for this Court is not whether Petitioner has shown that the result of the proceeding would have been different if counsel made different decisions, but "whether the state-post conviction court was reasonable in determining that [Petitioner] was not prejudiced." *Gulbrandson v. Ryan*, 738 F.3d 976, 990 (9th Cir. 2013). Here, given the substantial evidence against Petitioner, including eyewitness testimony and identification of Petitioner by the victim, the state court reasonably found that Petition was not prejudiced by trial counsel's failure to call witnesses to testify about Lopez provoking Swayne. Additionally, Swayne herself took the stand to testify about the events of the assault. Trial counsel could have reasonably decided that it was unnecessary to present any other witnesses given that Swayne stated that she was the one to stab Lopez.

Finally, Petitioner claims that trial counsel "[w]aive[d] the bifurcated trial on priors" and "admitted [P]etitioner's priors." (Doc. 1 at 26, 32) (emphasis omitted). Petitioner's argument is unavailing because the trial was bifurcated and the court, in a separate proceeding, found true the allegation that Petitioner had suffered six prior felony convictions for assault with a firearm—each of which qualified as a strike. Accordingly, the Court recommends denying this claim.

### D. **Counsel Did Not Have a Duty to Incorporate Additional Claims Requested by Petitioner.**

Petitioner argues his appellate counsel should have filed a motion for new trial and should have asserted ineffective assistance of trial counsel on appeal. (Doc. 1 at 26-27). A defendant's right to appellate representation does not include a right to present frivolous arguments to the court. *McCoy v. Court of Appeals of Wis., Dist. 1*, 486 U.S. 429, 436 (1988). An attorney is "under an ethical obligation to refuse to prosecute a frivolous appeal." *Id.* Further, no U.S. Supreme Court decision holds a "defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Petitioner's appellate counsel made a professional judgment not to include these arguments in an appeal. Petitioner has not shown that "but for counsel's unprofessional errors, [Petitioner] would have prevailed on appeal." Therefore, the Court recommends denying this claim for ineffective appellate counsel.

### V. **The Court Recommends Declining to Hold an Evidentiary Hearing.**

Petitioner requests the Court hold an evidentiary hearing. In habeas proceedings, "an evidentiary hearing is not required on issues that can be resolved by reference to the state court record." *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998). "It is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise." *Id.* at 1176. Here, all of Petitioner's claims can be resolved by

reference to the state court record. Accordingly, the Court recommends denying Petitioner's

request for an evidentiary hearing.

## VI.    <u>Certificate of Appealability</u>

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a

district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v.*

*Cockrell*, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a

certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

> (c)      (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

> (A)  the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

> (B)  the final order in a proceeding under section 2255.

> (2)  A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

> (3)   The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability

"if jurists of reason could disagree with the district court's resolution of his constitutional claims

or that jurists could conclude the issues presented are adequate to deserve encouragement to

proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Accordingly, the Court should decline to issue a certificate of appealability.

**VII.** **Conclusion and Recommendation**

Based on the foregoing, the undersigned recommends that the Court dismiss the petition for writ of habeas corpus with prejudice and decline to issue a certificate of appealability.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C □ 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, either party may file written objections with the Court. The document should be captioned □Objections to Magistrate Judge's Findings and Recommendations. Replies to the objections, if any, shall be served and filed within **fourteen (14) days** after service of the objections. The parties are advised that failure to file objections within the specified time may constitute waiver of the right to appeal the District Court's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **February 16, 2018**                        /s/ *Sheila K. Oberto*
                                                                UNITED STATES MAGISTRATE JUDGE